In the Matter of CORNELIA K. COLGATE et al., to Compel the
Accounting of STEPHEN PEABODY, JR., et al., as Executors of
STEPHEN PEABODY, Deceased Trustee, and of STEPHEN PEABODY,
JR., as Sole Successor Trustee, under a Trust Made by
CORNELIA H. PEABODY, as Settlor.

Supreme Court, Special Term, Suffolk County, March 27, 1950.

506

*Stanley Fowler* and *Milton N. Reuben* for Cornelia K. Colgate and others, petitioners and objectants.

*Carl J. Austrian,* general guardian of George Peabody, 3rd.

*Arthur A. McGivney* and *Arthur J. O'Leary* for Stephen Peabody, Jr., and others, respondents.

*George W. Percy,* as guardian ad litem of Joseph A. Peabody and another, infants, and others, respondents.

DALY, J. This is a proceeding under article 79 of the Civil Practice Act for an accounting and for the construction of a trust and an amendment thereto, and for other incidental relief.

Pursuant to a deed of trust dated June 1, 1918 (hereinafter referred to as the 1918 Trust) one Cornelia Haven Peabody transferred certain securities having a face value of $325,000 in trust for the support and maintenance of her children and grandchildren, and designated her husband, Stephen Peabody, as sole trustee. Although the settlor directed payment of income to be made to certain designated beneficaries in specific amounts, the trustee was given "absolute and unrestricted power to fix from time to time, and to vary and change from time to time, in his discretion, the amount of the income to be paid to each of said beneficiaries, and a like power to withhold all income from any or more of several beneficiaries and to apply and distribute the same to others of them." The trustee was, further, not to be liable or accountable "for any discretion exercised or investment made by him except in case of fraud or gross negligence." The corpus of the trust was to revert to the settlor or her estate, depending upon whether or not she survived the two named grandchildren whose lives were to determine the duration of the trust, and an unrestricted power to alter, amend, modify or revoke the trust was expressly retained.

On February 14, 1924, the settlor and the trustee entered into an agreement (hereinafter referred to as the 1924 Amendment) whereby the 1918 Trust was made irrevocable; the corpus was, upon termination of the trust, to be distributed in certain proportions among certain designated children and grandchildren, or their descendants; and a trust company was designated to act as cotrustee with Stephen Peabody, Jr., the settlor's son and an income beneficiary and remainderman, should the office of trustee, then filled solely by Stephen Peabody, become vacant. Should Stephen Peabody, Jr., for any reason be incapable of acting as individual trustee the corporate cotrustee was to designate a lineal descendant of the settlor to act as individual trustee with the written consent of the settlor should she be then living. The successor individual trustee was vested with all the rights, powers and duties of the original trustee, and was not to be liable to any person interested in the trust estate "except for bad faith or wilful default or gross negligence." This provision, it is to be noted, more strictly limited the individual trustee's discretion than did the provision contained in the 1918 Trust.

The trust company failed to qualify. Stephen Peabody died on January 6, 1945, from which date his son succeeded him as sole trustee. No lineal descendant of the settlor, not also an income beneficiary, is presently qualified to act as trustee.

The question presented at the outset concerns the effect to be given to the provision contained in the 1924 Amendment designating Stephen Peabody, Jr., himself an income beneficiary and remainderman, as successor trustee with the power to allocate income and in all other respects to act as trustee. The validity of the 1918 Trust in all respects is conceded.

The creation, construction, and execution of certain powers is controlled by article 5 of the Real Property Law (§ 130 *et seq.*), the provisions of which have been held to be applicable equally to personal property (*Hutton* v. *Benkard,* 92 N. Y. 295; *Matter of Thompson,* 274 App. Div. 49). The powers subject to the provisions of this article are of two classes: beneficial powers, and general or special powers in trust. Under the 1918 Trust, the power to allocate income among designated beneficiaries granted to Stephen Peabody, who was not himself beneficially interested in the trust, was a special power in trust (Real Property Law, § 138, subd. 2) the validity of which is not challenged. That same power in Stephen Peabody, Jr., the successor trustee, however, who was himself one of the beneficiaries, is urged by petitioners to be a beneficial power and hence void under section 136 of the Real Property Law. That contention cannot be sustained.

Section 136 of the Real Property Law provides: '' A general or special power is beneficial, where no person, other than the grantee, has, by the term of its creation, any interest in its execution. A beneficial power, general or special, other than one of those specified and defined in this article, is void.'' That the quoted statute voids a power granted to a person who is also the sole beneficiary seems clear. That the statute voids a power granted to a person who is one of several beneficiaries is, however, another matter.

Is the successor trustee, who is also one of the named beneficiaries, in fact the sole beneficiary within the contemplation of section 136 of the Real Property Law by virtue of the broad discretionary authority vested in him by the 1924 Amendment to determine who was to receive the income from the trust and in what amounts it was to be received? I think not. Concededly, because of the authority in the trustee to increase, decrease, or curtail entirely the sums directed to be paid by the settlor,

none of the beneficiaries designated in the 1918 Trust is certain of receiving any part of the income. But to say that the trustee could, therefore, pay the income to no one but himself would be completely to disregard the " bad faith " limitation placed upon his conduct as trustee as well as to nullify completely the expressed intention of the settlor to have the income of the trust applied to " the maintenance and support of the children and grandchildren  *  *  *  in the manner and amounts " therein provided. The petitioners themselves concede that no intention was indicated " that the trust was created for the purpose of providing for the payment of income to those persons whom the husband *arbitrarily* wanted to be the beneficiaries, nor is there anything in the 1924 Amendment to indicate that the income was to be for the benefit of those persons whom Stephen Peabody, Jr., *personally* wanted to benefit." (Memorandum, p. 20; emphasis supplied.) To deny, therefore, that each and every beneficiary named could compel the due execution of the power to allocate income, an essential to the creation of a valid power in trust (*Sweeney* v. *Warren,* 127 N. Y. 426, 433), would be equivalent to saying that the trustee might breach the trust with impunity (see 1 Scott on Trusts, § 120, pp. 605-606). No such contention can be sustained. Nor, for similar reasons, can section 158 of the Real Property Law be deemed applicable in this situation.

As just indicated, Stephen Peabody, Jr., is not the *sole* beneficiary; but, since he is one of several beneficiaries, the question still remains: Is the power to allocate income by a grantee who is himself a beneficiary a beneficial power and hence void under section 136 of the Real Property Law? Again I believe the correct answer is in the negative. The statute speaks of a " power," it speaks of " any interest," without distinguishing between the type and extent of the power or of the interest. Nor is the divisibility or indivisibility of the trust made a factor in determining whether or not a power is beneficial. With those considerations in mind, it seems settled that the mere fact that a grantee of a power is also one of several beneficiaries does not render the power illegal (*Rogers* v. *Rogers,* 111 N. Y. 228; *Doscher* v. *Wyckoff,* 132 App. Div. 139; *Rankine* v. *Metzger,* 69 App. Div. 264, affd. 174 N. Y. 540).

It is my view, therefore, that the power in trust granted to Stephen Peabody, Jr., a named beneficiary, by the 1924 Amendment was a valid power and invalidated no part either of the Amendment or of the 1918 Trust. It is, however, further urged that Stephen Peabody, Jr., presently the sole trustee, is

disqualified from administering the trust, merely because he also happens to be one of the designated beneficiaries.

The settlor first designated her husband sole trustee. Even a casual reading of the 1918 Trust and the 1924 Amendment will demonstrate that the broad discretion vested in him was attributable to the close relationship between them. As individual trustee to succeed her husband, the settlor named her son, Stephen Peabody, Jr., knowing full well that he was one of those whom she intended to benefit by the trust. Furthermore, his successor was to be " a lineal descendant " to be named by the corporate trustee with the consent of the settlor if she were then alive. The conclusion is irresistible that the settlor intended only a member of her family to administer the trust. Such an intention should be given effect unless statute or decision or some compelling ground of public policy requires a contrary result. I do not believe that it does (*Matter of Cowen*, 148 Misc. 35; see *Lenzner* v. *Falk*, 68 N. Y. S. 2d 699, 706). The settlor's choice of a trustee may have been unwise, but it was not illegal (*Rogers* v. *Rogers, supra; Doscher* v. *Wyckoff, supra; Rankine* v. *Metzger, supra*).

There is, of course, a presumption that a fiduciary will perform his duties in a proper manner (*Matter of Forte*, 149 Misc. 327). It is also true, however, that where he has an interest adverse to that of other beneficiaries his conduct in administering the trust will be more closely scrutinized. In *Irving* v. *Irving* (21 Misc. 743, 746), Justice McLAUGHLIN acknowledged the fact that a trustee who is also a beneficiary may be thus subjected to great temptation by reason of his own personal interest, but that such temptations are common. " Indeed," the court observed, " it is the universal experience that at times personal interests are brought sharply in conflict with duty and interest to others; but no court has ever yet gone so far as to hold that by reason of such temptations, one is rendered incapable of acting."

In *Rogers* v. *Rogers* (*supra*), the testator named four persons to act as executors in addition to his wife who was named as executrix. The income from the residuary estate was to be used by them for the comfortable support of the testator's wife, children, and mother. Should the income prove insufficient for the specified purpose there was given permission to invade principal. Only the wife qualified. By order of Special Term she mortgaged the property, applying the proceeds to the support of the beneficiaries, of whom she was one. The Court of Appeals sustained that course of action, saying (p. 237):

" The widow could act freely as to the beneficiaries other than herself, and as to herself four remained who could exercise the control and judgment improper for her. Trusts thus constituted are quite common, and although the trustees other than the beneficiary may die or decline to act, the court has power to supply their place, or, if need be, take upon itself the execution of the trust, so far as it ought not to be executed by the trustee who is also beneficiary." (See, also, *Doscher* v. *Wyckoff*, 132 App. Div. 139, 144, *supra*, and *Sweet* v. *Schliemann*, 95 App. Div. 266, 270-271.)

It should be noted that in the *Rogers* case (*supra*), the wife was not from the trust's inception a sole trustee named by the settlor; she became such when the four executors named failed to qualify. It can then be said that the settlor did not contemplate that her judgment alone should control disposition of the income, and principal if the need arose, even as to the other beneficiaries. The Court of Appeals nevertheless refused to disqualify the sole trustee entirely. Where, as in the case at bar, the settlor has herself named the sole trustee to act as such, fully aware, as she must be presumed to have been, of the ground presently asserted for his removal, courts are even more reluctant to remove the trustee (*Matter of Cowen, supra; Paddock* v. *Palmer*, 32 Misc. 426). Another important consideration in the instant case is that a contrary ruling may result in the termination of the trust because of the absence of a person qualified to administer it, an eventuality which is strongly to be avoided. (See 2 Scott on Trusts, § 196, p. 1065.) The correct rule to be followed in cases such as this is set forth in comment f of section 107 of the Restatement on Trusts as follows: " the mere fact that the trustee named by the settlor is one of the beneficiaries of the trust is not a sufficient ground for his removal or for refusing to confirm his appointment as trustee, even though a large degree of discretion is by the terms of the trust conferred upon the trustee. In such a case, however, the conduct of the trustee in the administration of the trust will be subject to careful scrutiny; and if it appears to the court that because of his interest or otherwise he is unduly favoring himself and not fairly exercising the discretion conferred upon him, the court will remove him as trustee." (See, also, 1 Scott on Trusts, § 107.1, pp. 562–563.)

In addition there is the mandate of section 172 of the Real Property Law which provides: " Except as provided in this article, the intentions of the grantor of a power as to the **manner,**

time and conditions of its execution must be observed; subject to the power of the supreme court to supply a defective execution as provided in this article.''

It is accordingly held that Stephen Peabody, Jr., was not as a matter of law disqualified from acting as trustee insofar as the other beneficiaries were concerned. As to him, however, this court will follow the procedure approved by the Court of Appeals in the *Rogers* case (*supra*) and will take upon itself the execution of the power in trust which is imperative (Real Property Law, § 157). To the extent that *Matter of Lawler* (215 App. Div. 506) holds contrary to the *Rogers* case (*supra*) and to the authorities above referred to on this point, I cannot follow it.

The settlor's intention to have a corporate trustee act as cotrustee with her son or his successor, her reference in the 1924 Amendment to '' the Corporate Trustee * * * whether original or successor,'' in addition to the fact that a successor individual trustee was to be named by the corporate trustee, seem to me sufficient to warrant the appointment of a trust company to fill the vacancy presently existing in the office of cotrustee. Filling such vacancy, furthermore, would seem to be conducive to the proper administration of the trust, particularly if it should be necessary to remove the present individual trustee. The order to be entered hereon will accordingly provide for such appointment and the court invites counsel's suggestions with reference thereto.

The final question relates to the objection of the general guardian to that portion of the account of proceedings contained in Schedules B and B-1 which shows the securities purchased by Stephen Peabody, Jr., which he sold or still retains and on which he sustained a loss or holds the securities so purchased at a loss as of May 31, 1949, the last day of the account, as well as the objection of the petitioners which charges said individual trustee with '' an abuse of discretion '' in the distribution of income.

No record is available of the transactions of Stephen Peabody, the original trustee, from the date of the creation of the trust to October 20, 1926, or approximately nine months after the death of the settlor. From October 21, 1926 to January 6, 1945, the date of death of the original trustee, the account filed discloses that the trust income was distributed in varying amounts to the beneficiaries designated in the 1918 Trust. The successor trustee, Stephen Peabody, Jr., however, distributed the income equally between his sister Emma, his brother George,

and himself, the respondents herein. The contention is that such distribution was prompted by malice and a desire to punish those persons who contested the probate of the last will and testament of Stephen Peabody and who attacked an *inter vivos* trust established by Stephen Peabody during his lifetime; and, therefore, that such distribution of income by Stephen Peabody, Jr., violated that portion of the 1924 Amendment which provided that no trustee was to be liable to any person interested in the trust estate " except for bad faith or wilful default or gross negligence." It is urged, therefore, that Stephen Peabody, Jr., be removed as trustee and surcharged for the allegedly improper distribution of income.

The issues presented by the foregoing objections cannot be determined without further proof. Accordingly, the order will provide that such objections be referred to a referee to hear and determine, and thereupon finally to pass upon and settle the account. Should it be determined that Stephen Peabody, Jr., did not act in good faith in administering the trust or that he was grossly negligent therein, an application for his removal and for the appointment of a successor individual trustee may then be made at the foot of the order.

Proceed on notice.